UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ORLANDO IMBERT-MARRERO,

      Plaintiff,

    v.

WARDEN, ERO EL PASO CAMP
EAST MONTANA, GARRETT
RIPA, MIAMI FIELD OFFICE
DIRECTOR; ACTING DIRECTOR-
ICE TODD LYONS, DIRECTOR
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT; AND
SECRETARY KRISTI NOEM,
SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY,

      Defendants.

Case No. 2:26-cv-922-KCD-DNF

_____/

## **ORDER**

Petitioner Orlando Imbert-Marrero is a noncitizen without legal status who is subject to a final order of removal. (Doc. 1 at 1.)[1] He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his continued detention violates the Fifth Amendment and the Administrative Procedure Act ("APA"). (Doc. 1.) The Government opposes the petition. (Doc.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

16.) For the reasons below, the habeas petition is **DENIED WITHOUT PREJUDICE**.

## I. Background

Imbert-Marrero is from Cuba. He first entered the United States in 1999 and became a lawful permanent resident. (Doc. 16-2 at 2.) In 2004, he was convicted of drug trafficking and served two years in prison. (*Id.*) As a result, Imbert-Marrero was placed in removal proceedings and ordered removed in 2006. (*Id.* at 1.) He waived his right to appeal—rendering the removal order final. (*Id.*)

Following his order of removal, Imbert-Marrero was placed in immigration custody. But ICE could not remove him at the time, so he was released on an order of supervision. (Doc. 16-3.) On July 29, 2025, Imbert-Marrero reported to ICE for a supervision appointment. (Doc. 1 at 15.) ICE revoked his supervision to execute the removal order. (Doc. 16-4 at 1-2.) ICE provided him with a notice of revocation of release, and later an informal interview. (*Id.* at 3.) ICE intends to remove him to Mexico. (Doc. 16-5.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

Imbert-Marrero's various claims are addressed in turn below.

#### A. *Zadvydas*

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that

3

period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Imbert-Marrero cannot satisfy the initial temporal requirement. True, ICE took him into custody on July 29, 2025, which is beyond six months. But Imbert-Marrero has refused removal to Mexico at least three times. (*See* Doc. 1-1 at 2-4; Doc. 16-6.) As best the Court can tell, the Government attempted removal on October 30, 2025, and again on November 3, 2025. (Doc. 16-6 ¶ 8.)

Imbert-Marrero's refusal to cooperate tolls the detention period. *See Akinwale*, 287 F.3d at 1052 n.4 (stating that "removal period shall be extended ... if the alien ... acts to prevent the alien's removal subject to an order of removal"); *Quo Zing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."). Thus, Imbert-Marrero's challenge to his continued detention fails. He can reassert a due process claim to the extent compliance

4

is re-established and the deportation still fails. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026).

Seemingly recognizing this problem, Imbert-Marrero's petition jumps to the burden-shifting framework, claiming that his removal is not likely. (Doc. 1 at 20-21.) This argument puts the cart before the horse. Detention is still presumptively reasonable for the reasons stated, and any due process claim is not ripe.

Imbert-Marrero attempts another workaround. He argues that the six-month reasonable detention period is cumulative, starting with his final removal order on January 12, 2006. (Doc. 1 at 20.) Using that calculus, the six-month period has long since passed.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that

5

*Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

Imbert-Marrero also argues that his clean supervision record precludes ICE from revoking his release. (Doc. 1 at 17.) This argument likewise fails. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Imbert-Marrero's release specifically to enforce his outstanding removal order, gave him notice that they were doing so, and afforded him an informal interview. Returning him to custody thus serves a recognized, legitimate government objective and was done in compliance with the INA's regulations.

**B. Procedural Due Process**

Imbert-Marrero separately presses a procedural due process claim. (Doc. 1 at 16-17.) He argues that ICE revoked his supervision without providing him any notification of revocation or an opportunity to be heard. (Doc. 1 at 16.) He also argues that ICE violated its regulations and internal instructions when it revoked his release. Specifically, he claims his supervision may only be revoked by the Executive Associate Commission or a district director (Doc. 1 at 18.)

Imbert-Marrero insists that his revocation is invalid because his re-detention was neither reviewed nor authorized by the proper official. (Doc. 1 at 18.) Because the Government previously released Imbert-Marrero after determining there was no significant likelihood of his removal, his return to custody travels under 8 C.F.R. § 241.13. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026). And unlike its counterpart (§ 241.4), § 241.13 contains no rigid signature mandate limiting revocation authority to specific executives. Because the agency operated under the correct regulatory framework, Imbert-Marrero's complaint about the authority to re-detain him falls flat.

Imbert-Marrero also claims that he did not receive a written decision stating the reasons for his redetention, nor a post-detention interview. (Doc. 1 at 18.) Not so. At its core, the Due Process Clause demands that before the

7

government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i). According to the unrebutted record, Imbert-Marrero received both. (*See* Doc. 16-4.) He got exactly what the Fifth Amendment requires—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Imbert-Marrero the requisite notice and an opportunity to be heard, his procedural due process claim fails.

### C. APA

Imbert-Marrero then tries to repackage his statutory challenge as a violation of the Administrative Procedure Act. He contends that the Government's decision to revoke his supervision was arbitrary, capricious, and contrary to law. (Doc. 1 at 22.)

8

The difficulty here is twofold. First, Imbert-Marrero has brought this claim in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for this claim. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Imbert-Marrero has an adequate remedy—the very habeas petition he filed to get through the

courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Imbert-Marrero is challenging here—the APA simply leaves no room for this redundant claim. *See Fleurimond*, 2026 WL 507542, at *3; *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

### D. Third-Country Removal

Finally, Imbert-Marrero claims that his removal to "various other countries … like Libya, South Sudan, and Eritrea" would be contrary to the United Nations Convention Against Torture due to notorious human rights abuses in those countries. (Doc. 1 at 24.) Because there is no evidence that Imbert-Marrero raised, let alone exhausted, all available administrative remedies on such a claim, 8 U.S.C. § 1252(d) precludes this Court's consideration. *See De La Teja v. U.S.*, 321 F.3d 1357, 1366 (11th Cir. 2003); *Murray v. U.S. Att'y Gen.*, 853 F. App'x 336, 340 (11th Cir. 2021). But more fundamentally, there is no evidence that ICE is attempting to remove him to those countries. Imbert-Marrero asks that the Court enter an order that Respondents may not remove him from the United States without providing him with written notice of the country to which they intend to remove him.

The Court declines the invitation to order Respondents to do something based on a hypothetical.

## IV. Conclusion

Imbert-Marrero's due process claim under *Zadvydas* fails due to his non-cooperation, so the habeas petition is **DENIED WITHOUT PREJUDICE** to him refiling a new petition should he cooperate and he can show there is no significant likelihood of removal in the reasonably foreseeable future. All other claims and relief are **DENIED**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on May 5, 2026.

Kyle C. Dudek
United States District Judge

11